Charles **RENFRO**, Appellant–
Defendant,

v.

Nancy **McGUYER**, Shirley Parrish, Leroy Sweeney, Kathy Sweeney, Gary Stone, Gloria Stone, Sam Martin and Marsha Martin, Appellees–Plaintiffs.

No. 82A01–0305–CV–184.

Court of Appeals of Indiana.

Dec. 3, 2003.

---

Robert R. Faulkner, Evansville, IN, Attorney for Appellant.

Charles L. Berger, Jennifer L. Ulrich–Keppler, Berger and Berger, Evansville, IN, Attorneys for Appellees.

## OPINION

SULLIVAN, Judge.

Charles Renfro appeals following the trial court's grant of summary judgment in favor of Nancy McGuyer, Shirley Parrish, Leroy Sweeney, Kathy Sweeney, Gary Stone, Gloria Stone, Sam Martin, and Marsha Martin (collectively "Homeowners"). We restate the issue presented for our

review as whether the trial court erred in concluding that the Homeowners were entitled to summary judgment as a matter of law upon their claim that Renfro violated a restrictive covenant for the subdivision in which he placed his home.

We affirm.

Renfro purchased a lot in the Shady Hills No. 5 subdivision. He then purchased a manufactured home to place upon the lot. The home was transported to the property in two sections to be put together and finished on-site. This included the addition of some siding, wooden roof structural members, decking, and shingles. The home was placed upon a concrete block foundation. A cooling system was installed and the home was hooked up to utilities.

■ Other homeowners in the subdivision filed a complaint against Renfro, requesting that the trial court find that Renfro's actions were in violation of a restrictive covenant placed upon his lot and to order him to remove the manufactured home. Specifically, the restrictive covenant stated, "No structure shall be moved onto any of said lots. All structures shall be newly erected thereon." Appendix at 32. The Homeowners asserted that the manufactured home was moved upon the property and remained mobile, and further, that it was not newly erected upon the lot. In reaching its decision in favor of the Homeowners, the trial court adopted nearly verbatim the proposed findings of fact and conclusions of law submitted by the Homeowners.[1] In so doing, the trial court accepted the Homeowners' assertions that the manufactured home was a structure which was moved onto the lot and that it was not newly erected thereon.

■ Summary judgment is appropriate when the designated evidentiary matter reveals that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Hammock v. Red Gold, Inc.*, 784 N.E.2d 495, 498 (Ind.Ct.App.2003), *trans. denied.* We apply the same standard as the trial court in considering an appeal from the grant or denial of summary judgment. *Id.* We consider only those facts which were designated to the trial court at the summary judgment stage. *Id.* We do not reweigh the evidence, but rather, liberally construe all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact. *Id.* Even if the facts are undisputed, summary judgment is inappropriate where the record reveals an incorrect application of the law to the facts. *Id.*

■ Negative covenants require that the covenantor refrain from doing some act. *Howell v. Hawk*, 750 N.E.2d 452, 456 (Ind.Ct.App.2001). When the covenant limits the uses which may be made by the owner or occupier of the land, it is called a

---

**1.** Renfro also presents the additional issues of whether the trial court disregarded certain portions of his sworn affidavit and whether portions of McGuyer's sworn affidavit should have been excluded. Whether the trial court did disregard some evidence designated by Renfro or consider evidence submitted by McGuyer which contradicted Renfro's evidence is irrelevant to our resolution of this case. The evidence upon which the trial court relied in reaching its decision is reflected in the findings of fact. When a trial court enters findings of fact and conclusions of law, such as it did here, they offer insight into the trial court's rationale for its decision. *Unincorporated Operating Div. of Indiana Newspapers, Inc. v. Trustees of Indiana University*, 787 N.E.2d 893, 900 (Ind.Ct.App.2003), *trans. denied.* However, they are not binding upon this court. *Id.* Further, we look to all of the designated evidence, not just that considered by the trial court. *See Hammock v. Red Gold, Inc.*, 784 N.E.2d 495, 498 (Ind.Ct.App. 2003), *trans. denied.*

restrictive covenant. *Id.* As a general proposition, restrictive covenants are disfavored in the law, strictly construed by the courts, and all doubts should be resolved in favor of the free use of property and against restrictions. *Id.* Because covenants are a form of express contract, we apply the same rules of construction. *Id.* Restrictive covenants will be enforced so long as the restrictions are unambiguous and do not violate public policy. *Holliday v. Crooked Creek Villages Homeowners Assoc., Inc.,* 759 N.E.2d 1088, 1092 (Ind. Ct.App.2001). However, where the intent of the parties cannot be determined within the four corners of the document, a factual determination is necessary to give effect to the parties' reasonable expectations. *Howell,* 750 N.E.2d at 456.

██ In support of his claim that the home did not violate the restrictive covenant, Renfro points to the evidence which indicates that his home was joined and finished on-site, that it was placed upon a permanent foundation, and that it is not designed to be moved. He asserts that it was not a structure until finished because it was not habitable/usable and required extensive work to place it together and finish it. Further, he claims that because it was put together on the lot that it was erected there. Renfro also relies upon cases from other jurisdictions in which courts have held that homes such as Renfro's did not violate language similar to that at issue in this case. *See e.g., Baker v. The Bennie J. and Dixie J. Aday Revocable Trust,* 128 N.M. 250, 991 P.2d 994 (N.M.Ct.App.1999), *Ussery Investments v. Canon & Carpenter, Inc.,* 663 S.W.2d 591 (Tex.App.1983).

The Homeowners, on the other hand, claim that the home was not permanently affixed to the property. Instead, as found by the trial court, they declare that the home must only be unhooked from the utilities and placed back upon wheels to be transported to a new location. Additionally, they rely upon the Black's Law Dictionary definition of "structure" and this court's decision in *Highland v. Williams,* 166 Ind.App. 492, 336 N.E.2d 846 (1975), to claim that this home was a "structure" when moved onto the property in violation of the first part of the restrictive covenant. Moreover, they assert that more than final assembly upon the site is required in order to comply with the covenant. According to the Homeowners, "newly erected" means that the home must be built from the ground up on the property where it is to stay.

██ In *Adult Group Properties, Ltd. v. Imler,* 505 N.E.2d 459 (Ind.Ct.App. 1987), *trans. denied,* this court was called upon to determine whether a trial court correctly interpreted the meaning of the word "family" as contained in a covenant. The court noted, among other principles, that when the language of a covenant is unambiguous, clear, and specific, there is no room for interpretation or for construction. *Id.* at 465. When the language is ambiguous, the paramount rule for interpretation is to give effect to the actual intent of the parties, as of the time the covenant was made, and as collected from the whole instrument construed in connection with the circumstances surrounding its execution. *Id.* Since intent, and not words, is the essence of every agreement, it would seem that such words are to be construed to effectuate the intent of the parties, and hence, according to their accustomed meaning as used and understood by the community at large, unless the circumstances and context indicate that a different meaning is intended. *Id.* at 466. Words, phrases, sentences, paragraphs, and sections of a restrictive covenant should not be read in isolation. *Cf. Mislenkov v. Accurate Metal Detinning, Inc.,*

743 N.E.2d 286, 290 (Ind.Ct.App.2001) (discussing the interpretation of contracts in general). If possible, the entire covenant must be read together and given meaning. *Id.*

We begin our analysis by acknowledging that the restrictive covenant at issue is not a model of clarity. We need look no further than at several dictionary definitions of the key words "structure" and "erect" to arrive at this conclusion.[2] Likewise, it is highlighted by the focus of the parties' argument upon the meaning of "structure" and "erect" and each parties' respective view of whether the home was "permanently" placed upon the property. As we perceive the issue, our critical concern is not what the words mean in isolation, but what the covenant means as a whole. Further, whether Renfro intended that the home never be moved from the site is inapposite to whether his actions violated the restrictive covenant because the covenant only pertains to the moving of a structure *onto* the lot.

A manufactured home is defined under the National Manufactured Housing Construction and Safety Standards Act of 1974 as "a structure, transportable in one or more sections ... which is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities...." 42 U.S.C. § 5402(6) (2003).[3] From this definition, it is clear that the critical issue when discussing manufactured housing is that the structure is transportable. In this case, there are no genuine issues of material fact which preclude the determination that Renfro's home was a "manufactured home" within the definition established by the federal government. It was constructed off-site and transported to the lot in two sections. These facts are admitted by Renfro. Additionally, Renfro acknowledges that his home is called a "manufactured home," although he makes no reference to the definition of manufactured home cited above.

Taken as a whole, it is apparent that the home which Renfro moved to the lot was the type of structure which the covenant sought to exclude. Renfro's home was built off-site, transported to the lot, and the two sections put together. Clearly, then, it was a structure moved onto the property. While this may seem to be a simple reading of the covenant, it is the logical reading of the covenant. Were we to adopt Renfro's argument and determine that his home did not violate the covenant, the only types of structures which would be excluded from the lot would be one section "trailers."[4] Though there is no doubt that such structures are excluded, the language employed in the covenant evinces a clear intent that the covenant be interpreted more broadly.[5] Had the

2. These terms are not defined in the recorded document which establishes the restrictive covenants for the subdivision.

3. This portion of the definition of "manufactured home" has been in existence since 1980. At that time, the previous definition in § 5402 was amended so that "mobile home" became "manufactured home" and the size requirements for a structure to fit within the definition were changed.

4. One of the underlying problems in this case is the existence of a stigma upon the type of residence which Renfro purchased. It is apparent that the Homeowners view the residence with disdain, and much of the concern of the parties seems to be focused upon whether the home is a "trailer." That term has no real legal significance in this case. We use the term in this decision because it is likely a term which triggers a nearly universal response in readers' minds.

5. We need not decide the precise breadth of the word "structure" as used in the covenant; nor conversely need we set forth the precise bounds of the word.

homeowners in this case sought to exclude something less than all movable structures, and just sought to exclude "trailers" as Renfro claims, such could have been easily done by stating that "trailers" are excluded. No more is necessary.[6] Therefore, we conclude that as a matter of law, Renfro's home violates the restrictive covenant placed upon his lot.

Our decision is supported by this court's decision in *Highland*. In that case, this court determined that the homeowner had violated the restrictive covenant, which contained language similar to that at issue here, by moving a structure onto his lot. *Highland*, 166 Ind.App. at 497, 336 N.E.2d at 848. The structure was a two section, steel-roofed and steel-framed unit which was generally described as a "trailer." This court noted that the testimony established that the residence was a "trailer" and that it violated the covenant prohibiting "trailers." Nonetheless, this court also concluded that the trial court's judgment did not depend upon whether the structure was a "trailer" because the evidence established that the structure was moved onto the lot, which violated a separate covenant. And just as in this case, the concern was not when or if the home was a *structure* when moved onto the lot, but that it was *moved* onto the lot.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and RILEY, J., concur.

---

6. Indeed, a separate covenant stated that no trailer shall be used as a residence.