**James JOHNSON and Berma Johnson, Appellants,**

v.

**James L. DAWSON, Earl E. Nelson, Jane Graham and Brenda Kauffman, Appellees.**

No. 79A04–0601–CV–8.

Court of Appeals of Indiana.

Nov. 17, 2006.

---

Carolyn S. Holder, Holder Law Firm, Lafayette, IN, Attorney for Appellants.

Jerome L. Withered, Sean M. Persin, Withered Burns & Persin, LLP, Lafayette, IN, Attorneys for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

James and Berma Johnson ("the Johnsons" or "Defendants") appeal from the trial court's issuance of an injunction following a bench trial. The injunction prohibited the Johnsons from building a detached two-car garage on their property in the Meadowbrook Subdivision No. 1 ("Meadowbrook"). The trial court also awarded attorney's fees to James L. Dawson, Earl E. Nelson, Jane Graham, and Brenda Kauffman (collectively, "Dawson" or "Plaintiffs"). The Johnsons raise three issues for our review:

    1.   Whether the trial court erred in its interpretation of a restrictive covenant.

2. Whether Dawson's acquiescence in prior restrictive covenant violations by other Meadowbrook landowners bars an action against the Johnsons.

3. Whether the trial court properly awarded attorney's fees.

We affirm.

### FACTS AND PROCEDURAL HISTORY

In its order, the trial court found the following undisputed facts:

1. Plaintiffs are residents and lot owners in [Meadowbrook] located in Tippecanoe County, Indiana.

2. [The] Johnson[s] are residents of [Meadowbrook] and own residential real estate located at 1283 Meadowbrook Drive, Lafayette.

3. Covenants, Restrictions and Conditions were promulgated and adopted for [Meadowbrook] in May of 1956 and were recorded in the Tippecanoe County Recorder's Office.

4. The Restrictive Covenants stipulated into evidence are valid and enforceable restrictions on the use of each lot in [Meadowbrook] including the Johnsons' lot.

5. Plaintiffs ... are each entitled to enforce the terms and conditions of the Restrictive Covenant applicable to [Meadowbrook].

6. Defendants' lot currently contains a detached single-family dwelling, which includes an attached private garage for two (2) cars.

7. Defendants seek to build an additional detached private garage for two (2) additional cars.

8. Restrictive Covenant No. 2 provides:
No structure shall be erected, altered, placed or permitted to remain on any residential building lot other than one detached single-family dwelling not to exceed two stories in height and a private garage for not more than three cars; carports shall be considered as garages.

\* \* \*

12. At the May 3, 2005[,] meeting [of the Board of Directors of Meadowbrook], the Board members approved the plans for the [Johnsons' additional] garage.

\* \* \*

16. Based upon ... documents submitted by Defendants ... a building permit was issued by Tippecanoe County on May 23, 2005.

17. The Board of Directors of [Meadowbrook] met again on May 23, 2005[,] and voted to disapprove construction of the Johnsons' garage.

18. The Johnsons proceeded after May 23, 2005[,] with excavating and pouring concrete for the footings pursuant to the building permit.

19. On June 8, 2005[,] the Johnsons received a letter from Plaintiffs' attorney demanding that the Johnsons cease construction, citing Restrictive Covenant Number 2 of [Meadowbrook].

\* \* \*

25. There are numerous detached garages, sheds, and carports in [Meadowbrook].

Appellants' Exhibit A at 1–4. The trial court went on to make the following legal conclusions:

3. The plaintiffs did not waive [their] right[s] or acquiesce in the defendants['] [sic [1]] action.

---

**1.** Neither party argues whether Dawson acquiesced in prior violations by the Johnsons,

* * *

5. The Covenants that govern [Meadowbrook], as amended, do not give the Board of Directors and Officers the authority to issue binding approval of nonconforming structures within the Subdivision.

* * *

7. Paragraph 2 of the Restrictive Covenants is ambiguous. It unambiguously states that only one single family, detached dwelling, no more than two stories in height, may be constructed on any lot. It is ambiguous as to how many garages or carports, for how many cars, are permitted. The Court finds that the intention of the parties was to restrict the number of cars for which garages were built, and not to restrict the number of garages built for them. The Court finds that a garage is permitted for no more than three cars, but there may be one garage for two cars and another garage for one car or one garage for three cars, or three garages for three cars. The use of the word "a" to modify garage rather than the word "one" leads the Court to this conclusion. 8. The Court therefore concludes that the building of a second garage does not violate the Restrictive Covenants, but *the plan to have garage space for four cars does violate the Restrictive Covenants.*

* * *

12. The Court finds that $175.00 per hour is a reasonable attorney's fee. The Court finds that plaintiffs are entitled to their attorney fees and costs. The Court awards $5,600.00 in attorney fees and court costs of $111.00.

nor do the facts reveal any such prior violations. Rather, the briefs make it clear that the trial court intended to state that Dawson

13. Defendants are enjoined from completing their project in a manner which would result in garage space for more than three cars on their lot. Defendants are ordered to pay plaintiffs' attorney fees and costs in the sum of $5,711.00.

*Id.* at 5–7 (emphasis added). This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: The Restrictive Covenant

■■■ A restrictive covenant is an agreement between a grantor and a grantee in which the latter agrees to refrain from using his property in a particular manner. *Mayer v. BMR Properties, LLC,* 830 N.E.2d 971, 979 (Ind.Ct.App.2005). One purpose of restrictive covenants is to maintain or enhance the value of land "by controlling the nature and use of lands subject to a covenant's provisions." *Grandview Lot Owners Ass'n v. Harmon,* 754 N.E.2d 554, 557 (Ind.Ct.App.2001) (quoting *Campbell v. Spade,* 617 N.E.2d 580, 583 (Ind.Ct.App.1993)). Because covenants are a form of express contract, we apply the same rules of construction. *Renfro v. McGuyer,* 799 N.E.2d 544, 547 (Ind.Ct.App.2003), *trans. denied.* Construction of the terms of a written contract is a pure question of law for the court and we conduct a de *novo* review of the trial court's conclusions in that regard. *Grandview,* 754 N.E.2d at 557.

■■■ Indiana law permits restrictive covenants but finds them disfavored and justified only to the extent they are unambiguous and enforcement is not adverse to public policy. *Holliday v. Crooked Creek Villages Homeowners Assoc., Inc.,* 759 N.E.2d 1088, 1092 (Ind.Ct.App.2001).

did not acquiesce in prior violations by other Meadowbrook landowners.

When courts are called upon to interpret restrictive covenants, they are to be strictly construed, and all doubts should be resolved in favor of the free use of property and against restrictions. *Renfro,* 799 N.E.2d at 547. The covenanting parties' intent must be determined from the specific language used and from the situation of the parties when the covenant was made. *Mayer,* 830 N.E.2d at 979. Specific words and phrases cannot be read exclusive of other contractual provisions. *Id.* In addition, the parties' intentions must be determined from the contract read in its entirety. *Id.* We attempt to construe contractual provisions so as to harmonize the agreement, *id.,* and so as not to render any terms ineffective or meaningless, *City of Lawrenceburg v. Milestone Contractors, L.P.,* 809 N.E.2d 879, 883 (Ind.Ct.App. 2004), *trans. denied.*

Here, restrictive covenant number two ("the Restrictive Covenant"), provides: "No structure shall be erected, altered, placed or permitted to remain on any residential building lot other than one detached single-family dwelling not to exceed two stories in height and a private garage for not more than three cars; carports shall be considered as garages." Appellant's Exhibit A at 2. The Johnsons maintain that the Restrictive Covenant's limitation of " 'not more than three cars' can reasonably be read to apply solely to any detached garage, or to the total amount of garage space on the property." Appellant's Brief at 7. Thus, the Johnsons argue, the Restrictive Covenant must be interpreted in a manner that favors the free use of the property, which, for the Johnsons, means allowing the construction of a detached two-car garage to accompany their attached two-car garage. Dawson, on the other hand, asserts that the Restrictive Covenant is unambiguous regarding the maximum garage space permitted,

namely, space for three cars. We agree with Dawson and the trial court's analysis that "the intention of the parties was to restrict the number of cars for which garages were built." Appellant's Exhibit A at 6.

■■■ The Restrictive Covenant must be interpreted as a whole. We agree with the trial court that the phrase "a private garage" is, in isolation, ambiguous as to the number of attached-detached garage combinations available to a Meadowbrook landowner, especially in light of the drafters' explicit use of the word "one" to modify "detached single-family dwelling" in the immediately preceding clause. Appellant's Exhibit A at 2. What is unambiguous, however, is the restrictive phrase "for not more than three cars." *Id.* "If the language is clear and unambiguous, we give that language its 'plain, usual, and ordinary meaning.' " *King v. Ehrens,* 804 N.E.2d 821, 828 (Ind.Ct.App.2004). Here, not more than three means not more than three. It does not mean four, five, or six, which could result if the three-car limitation applied separately to an attached garage and a detached garage on the same lot. Further, when there is an ambiguity, "the paramount rule for interpretation is to give effect to the actual intent of the parties ... as collected from the whole instrument...." *Renfro,* 799 N.E.2d at 547. Again, specific words and phrases cannot be read exclusive of other contractual provisions; rather, the parties' intentions must be determined by reading the contract in its entirety and attempting to construe contractual provisions so as to harmonize the agreement. *Mayer,* 830 N.E.2d at 979. Thus, in interpreting the Restrictive Covenant as a whole, we first attempt to understand the ambiguous language in conjunction with the unambigu-

ous language.[2]

Considering the ambiguous and unambiguous language together, the most reasonable interpretation is that Meadowbrook landowners are limited to garage space of not more than three cars per lot. To interpret the Restrictive Covenant otherwise, such that the three-car limitation would apply to each garage rather than the total garage space, would eviscerate the Restrictive Covenant by allowing a landowner to erect multiple three-car garages. However, we construe contractual provisions so as not to render any terms ineffective or meaningless. *City of Lawrenceburg*, 809 N.E.2d at 883. Thus, the following are examples of garage combinations available to Meadowbrook landowners: an attached one, two, or three-car garage; a detached one, two, or three-car garage; an attached one-car garage along with a detached one or two-car garage; or an attached two-car garage along with a detached one-car garage. In each of those examples, the restricting factor is the unambiguous three-car limit. Hence, the Johnsons are not permitted to build a detached two-car garage to accompany their existing attached two-car garage, as that would bring their total garage space to four cars, in violation of the Restrictive Covenant.

### Issue Two: Acquiescence

The Johnsons next argue that their building of an additional detached two-car garage is "in line with the traditional usage of the parties"[3] as other landowners within Meadowbrook properties have garage space for more than three cars. Appellant's Brief at 7. The Johnsons

argue, in effect, that Dawson has acquiesced in prior restrictive covenant violations of other Meadowbrook landowners and is therefore barred from challenging the Johnsons' building of the additional detached two-car garage. We cannot agree.

Paragraph number twenty-seven of the Meadowbrook restrictive covenants reads:

The failure for any period of time to compel compliance with any restrictions, condition or covenant shall in no event be deemed as a waiver of the right to do so thereafter, and shall in no way be construed as a permission to deviate from said restrictions, conditions and covenants.

Appellants' App. at 22. Hence, under paragraph number twenty-seven, Dawson may enforce the Restrictive Covenant against the Johnsons despite prior violations by other Meadowbrook landowners. Nonwaiver clauses generally are enforced in Indiana. *See, e.g., HK New Plan Marwood Sunshine Cheyenne, LLC v. Onofrey Food Servs., Inc.*, 846 N.E.2d 318, 325 (Ind.Ct.App.2006).

Nonetheless, the Johnsons argue that such clauses "have not been enforced [in Indiana law] in the context of a multi-party restrictive covenant. This difference is material." Appellant's Brief at 7. We agree that the enforcement of such nonwaiver clauses in the multiparty context is a question of first impression in Indiana courts. That said, we are not persuaded that multiparty nonwaiver clauses are materially different from two-party nonwaiver

---

2. The paragraphs surrounding the Restrictive Covenant discuss setback requirements and building procedures. Hence, these paragraphs do not aid in the interpretation of the Restrictive Covenant.

3. The Johnsons cite as their factual support for this argument the trial court's finding number 25. Thus, we do not accept Dawson's argument that there is no factual basis in the trial court's findings supportive of the Johnsons' position.

clauses, or that such clauses are per se unenforceable.

The Johnsons are concerned that the enforcement of the nonwaiver clause in the multiparty context "is less likely to have a beneficial effect, and far more likely to have an insidious one.... [A] multi-party non-waiver clause [here] raises the specter of selective enforcement." *Id.* at 8. In support, the Johnsons cite to *Hrisomalos v. Smith,* 600 N.E.2d 1363 (Ind.Ct.App. 1992). In *Hrisomalos,* we generally discussed and applied the doctrine of acquiescence. However, no mention was made in *Hrisomalos* of a nonwaiver clause. Thus, *Hrisomalos* is inapposite. Further, the Johnsons' argument is unpersuasive on the simple ground that the Johnsons agreed to the Restrictive Covenant. Hence, even if violations and selective enforcement are occurring, the Johnsons are bound by the clause.

■■■ Although there is no Indiana case law on this issue, we are persuaded by the reasoning of the Arizona Court of Appeals's recent opinion in *Burke v. Voicestream Wireless Corp. II,* 207 Ariz. 393, 87 P.3d 81 (App.2004). In *Burke,*[4] the court stated:

> Even though [the defendant property owners] presented evidence that the [objecting plaintiff] homeowners in [the] Desert Estates [residential subdivision] have acquiesced in prior violations of [the restrictive covenants], we have not been presented any persuasive reason why the non-waiver provision of the Restrictions should not be enforced in this instance. Unambiguous provisions in restrictive covenants will generally be enforced according to their terms. These Restrictions were drafted to allow

enforcement of restrictive covenants by individual homeowners. The non-waiver provision, by its plain language, is intended to prevent a waiver based on prior inaction in enforcing the Restrictions. To hold otherwise would render the non-waiver provision meaningless and violate the expressed intention of the contract among the property owners.

*Id.* at 86 (citations omitted). Further, enforcement of the nonwaiver clause in the multiparty context allows prospective purchasers of property to rely on recorded restrictions and covenants. *See Simms v. Lakewood Village Property Owners Ass'n,* 895 S.W.2d 779, 786–87 (Tex.App.1995). Again, restrictive covenants are permissible under Indiana law so long as they are unambiguous and their enforcement is not adverse to public policy. *Holliday,* 759 N.E.2d at 1092. Paragraph number twenty-seven of the Meadowbrook restrictive covenants is an unambiguous nonwaiver clause, and its enforcement is not adverse to public policy. As such, the Johnsons are barred from raising the defense of acquiescence.

**Issue Three: Attorney's Fees**

■■■ Finally, the Johnsons argue that "it was unjust" for the trial court to award attorney's fees to Dawson given the Johnsons' exercise of good faith attempts to comply with the restrictive covenants by seeking the approval of Meadowbrook's Board of Directors. Appellant's Brief at 11. However, "[i]t is well settled that one is entitled to attorney fees when provided for by statute or contract." *Parrish v. Terre Haute Sav. Bank,* 438 N.E.2d 1, 3 (Ind.Ct.App.1982) (citing *Trotcky v. Van*

---

**4.** In *Burke,* the nonwaiver provision provided that "failure to enforce any of the restrictions, rights, reservations, limitations and covenants contained herein shall not in any event be construed or held to be a waiver thereof or consent to any further or succeeding breach or violation thereof." *Burke,* 87 P.3d at 86.

*Sickle,* 227 Ind. 441, 85 N.E.2d 638 (1949)) (emphasis removed). Paragraph number twenty-six of the restrictive covenants states that "the owner, owners, or persons in possession against whom action is taken shall pay court costs and reasonable attorney's fees in the event judgment is rendered against him." Appellant's App. at 22. The Johnsons do not challenge the reasonableness of the trial court's award, nor do they argue that the clause is ambiguous or that it violates public policy. *See Walton v. Claybridge Homeowners Ass'n, Inc.,* 825 N.E.2d 818, 825–26 (Ind.Ct.App. 2005). Because the Johnsons agreed to be responsible for attorney's fees in the event they were found to have violated the restrictive covenants, we cannot say that the award was improper.

## Conclusion

Based on the foregoing, we hold that: (1) the Restrictive Covenant limits the cumulative total garage space to three cars; (2) the nonwaiver clause is valid and enforceable; (3) the Johnsons are barred by the nonwaiver clause from asserting the defense of acquiescence; and (4) the award of attorney's fees to Dawson was not improper.

Affirmed.

SHARPNACK, J., concurs.

ROBB, J., dissents with separate opinion.

ROBB, Judge, dissenting with separate opinion.

I respectfully dissent from the majority opinion with regard to the restrictive covenant because a less restrictive interpretation should be applied in light of ambiguity within the covenant. Indiana law disfavors restrictive covenants, and any doubt must be resolved in favor of the free use of property and against restrictions. *Grand-*

*view Lot Owners Ass'n, Inc. v. Harmon,* 754 N.E.2d 554, 557 (Ind.Ct.App.2001), *trans. denied.* The intent of the parties to a restrictive covenant, which is a form of express contract, must be derived from the specific language used, as well as the circumstances of the parties, at the time the covenant was created. *Mayer v. BMR Properties, LLC,* 830 N.E.2d 971, 979 (Ind. Ct.App.2005). The restrictive covenant must be considered in its entirety, rather than reading specific words and phrases to the exclusion of other provisions. *Id.*

Presently, the majority isolates the phrase "for not more than three cars" in determining that the intent of the drafters was to limit the number of cars for which garages were built, which the majority extrapolates as resulting in a total of only three spaces available on an entire residential lot. However, closer analysis of the restrictive covenant's inherent ambiguity requires that it be interpreted against the drafters, therefore favoring less restriction of property use.

The restrictive covenant at issue deals with permissible structures on residential lots in Meadowbrook. As the majority notes, the ambiguity in the restrictive covenant stems from language indicating the types and description of structures permitted on each residential lot. Although the limiting phrase "for not more than three cars" is unambiguous, its relation to ambiguous language in the restrictive covenant results in two possible interpretations: the more restrictive, which limits the number of spaces for vehicles on the entire lot to three, and the less restrictive, which limits the number of spaces in a garage structure to three. The majority improperly applies the more restrictive interpretation in light of the ambiguity, rather than construing the covenant against the drafters and in favor of the free use of property.

The language of the restrictive covenant disallows any structure on a residential lot "other than one detached single-family dwelling not to exceed two stories in height and a private garage for not more than three (3) cars." Appellants' Appendix at 19. The language does not specify "one dwelling *with* a garage," or "one dwelling and garage," which would arguably prevent the Johnsons from building a second, detached, garage. Instead, the language, positively stated, permits only two structures on a residential lot: one dwelling and a garage. Here, the Johnsons's lot contains one structure, a dwelling. They wish to build a separate garage structure as contemplated by the covenant. Thus, the distinction between types of structures is important where, as here, the landowner's dwelling also incorporates space for vehicles, resulting in ambiguity as to the three-car limitation. The ambiguity must be resolved in favor of the landowner.

Focusing on the two permissible structures does not discount the size limitation contained in the restrictive covenant. Just as the dwelling structure described in the provision is limited in size to two stories, the garage structure is limited in size by the number of cars it may contain. As phrased, the unambiguous clause "for not more than three cars" directly modifies "a private garage," the permissible second structure. It may well be that the drafters of the restrictive covenant meant to restrict total space for cars on an entire residential lot, but the language of the covenant does not state that the total space on *each lot* shall not exceed that required for three cars. The limitation is reserved for garage structures. Here, the Johnsons's proposed garage will have space for two cars, which is less than the limitation imposed upon garage structures under the covenant's language.

The less restrictive interpretation does not render language of the restrictive covenant ineffective or meaningless. Rather, it emphasizes the permissibility of having two structures on a residential lot, and functions to limit the size of one of these structures, a private garage, to space for no more than three cars. Indeed, three means three as applied to garage structures. Extending this limitation to the entire residential lot, rather than just to a garage structure, is contrary to the presumption against the drafters where there is ambiguity in the language of the covenant. Moreover, the majority's fear that the less restrictive interpretation will result in the potential erection of multiple three-car garages is overstated. In fact, the restrictive covenant does not permit building more than a singular dwelling structure and a singular garage structure on each lot. Thus, because the Johnsons wish to build a garage structure with space for two cars on a lot that currently contains only a dwelling, they are in compliance with the limitation imposed by the restrictive covenant.

Apart from the language of the restrictive covenant at issue, the intent of the parties as evinced by the circumstances at the time the covenant was drafted supports construing it against the drafters. This is evident in paragraphs following the restrictive covenant, to which they relate. The restrictive covenant at issue is the second paragraph in a long list of restrictive covenants, and is the first of three restrictive covenants directly dealing with structures on residential lots in Meadowbrook. It establishes the two structures allowable on these lots, and is followed by paragraphs pertinent to structures on each residential lot by delineating setback requirements and the procedure for erection or placement of structures on lots. Far from being irrelevant to the interpretation of the restrictive covenant at issue, this surrounding context supports the restric-

tive covenant's larger purpose as being to limit the type, number, and specifications of structures upon a residential lot. For this purpose, as a permissible structure, only a garage is explicitly limited to hold no more than three cars. Projecting this limitation onto dwelling structures or the entirety of a residential lot does not resolve the doubts created by the covenant's language against restriction and in favor of the owner's free use of the property.

As for the majority's discussion of acquiescence, I do not disagree that Dawson may now seek to enforce the restrictive covenant, although there has been a marked lack of enforcement in the past. Nevertheless, even this lack of previous enforcement weighs in favor of the Johnsons's free use of property and against the drafters of the ambiguous covenant. The issue is not whether Dawson seeks to correct a previously applied interpretation of the restrictive covenant, and therefore pursues enforcement of the more restrictive interpretation rather than an incorrect, less restrictive interpretation. The interpretation of the restrictive covenant has always been ambiguous. In the absence of discussion as to the proper interpretation of the restrictive covenant, and where other three-car garages have been erected in Meadowbrook, a reasonable person would assume that the less restrictive interpretation, limiting only garage structures to space for no more than three cars, is controlling.

Moreover, there is no evidence from past enforcement that suggests the more restrictive interpretation propounded by Dawson, and adopted by the trial court and the majority of this court, was the intent of the drafters. Had prior enforcement indicated that the intent of the drafters was to impose the greater restriction, the current problem arising from the covenant's ambiguity may have been lessened or eliminated. In other words, prior actions may shed light on the meaning of a provision. As this is not presently the case, and because the ambiguity remains, it must be resolved against the drafters and in favor of the Johnsons.

The end result is that the ambiguity in the restrictive covenant requires an interpretation against the drafters, and favoring the Johnsons's free use of their property. A narrow construction of the restriction applied to the present circumstances permits the Johnsons to build a separate garage structure limited to space for three cars or less. Although the trial court was correct that the covenant restricts the number of cars for which a garage structure may be built, it incorrectly applied that limitation to the entirety of the residential lot, including the landowner's dwelling, rather than only to the proposed garage structure. This wrongly imposes the greater restriction where ambiguity in the restrictive covenant dictates lesser restriction. Given the presumption against the drafters, as well as the fact that prior conduct seemingly permitted the Johnsons's actions, the less restrictive interpretation should govern the present outcome.