**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Dec 16 2014, 8:43 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BRUCE NORMAN STIER**
Logan & Stier, LLC
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**KARL J. VERACCO**
**LARRY L. BARNARD**
Carson Boxberger, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DENNIS WRIGHT, | ) | |
| | ) | |
| Appellant-Defendant/Counterclaimant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1403-PL-107 |
| | ) | |
| LACABREAH COMMUNITY ASSOCIATION, INC., | ) | |
| | ) | |
| Appellee-Plaintiff/Counter-Defendant. | ) | |

APPEAL FROM THE ALLEN CIRCUIT COURT
The Honorable Thomas J. Felts, Judge
Cause No. 02C01-1301-PL-01

**December 16, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant/Counter-Claimant, Dennis Wright (Wright), appeals the trial court's summary judgment in favor of Appellee-Plaintiff/Counter-Defendant, LaCabreah Community Association, Inc. (the Association), finding, as a matter of law, Wright to be in violation of the LaCabreah Restrictive Covenants.

We affirm.

## ISSUE

Wright raises one issue on appeal, which we restate as follows: Whether the trial court properly found that no genuine issue of material fact existed that Wright violated the LaCabreah Restrictive Covenants when he erected a fence on his premises without obtaining prior approval of the Architectural Control Committee.

## FACTS AND PROCEDURAL HISTORY

In July of 2001, Wright purchased real estate located at 318 Calash Run, in Section II of the LaCabreah subdivision, in Fort Wayne, Indiana (the Property). The ownership of a parcel in the subdivision is subject to the Dedication, Protective Restrictions, Covenants, Limitations and Easements and Approvals Appended on the Plat of LaCabreah, Section II (the Restrictive Covenants) and residency in the subdivision conveys membership in the Association.

Section 5 of the Restrictive Covenants details the architectural control in the LaCabreah subdivision, and reads, in pertinent part:

> 5.1. No building, fence, . . . shall be commended, erected, or maintained upon a lot, . . . until the plans and specifications showing the structure's

2

nature, kind, shape, height, materials and location are submitted and approved by the Committee in writing as to the structure's harmony of external design and location in relation to surrounding structures and topography in the Subdivision[.]

\* \* \*

5.4. In the event the Committee . . . fails to approve or disapprove the design and location of a proposed structure within 30 days after said plans and specifications have been submitted to it, approval will not be required, and approval under this Section 5 will be deemed to have been given.

(Appellant's App. pp. 24-25). The Committee is defined as "[t]he Architectural Control Committee established under Section 5 of the Covenants." (Appellant's App. p. 21).

In May of 2012, Wright planned to construct a fence on the Property and sought clarification about the Association's specific criteria besides the general guidelines included in the Restrictive Covenants. An Architectural Control Committee Member directed Wright's wife to review the Architectural Policies published on the LaCabreah website. With respect to fences, these policies set out the following standards and criteria:

1. FENCES: Fences must be commercial-grade wooden or poly vinyl construction and must be six feet high unless otherwise approved. Poly vinyl fences shall be of earth tone colors and must conform aesthetically to the home. The finish on wooden fences must be paint, stain or natural earth tone color and must conform aesthetically with the home. All fence posts must be either integral to the fence structure or face the interior of the fence; external posts are prohibited. Fencing cannot block the line of sight to the lake of any house on a lot contiguous to the lakes in the community. Fencing cannot extend forward of the back line of a dwelling. All fencing must be maintained in a high state of repair. (Section 5.1 of Covenants).

(Appellant's App. p. 189). On May 17, 2012, Wright submitted his plans and specifications for the proposed fence to the Architectural Control Committee.

Approximately a month later, on June 19, 2012, he received a Notice of Rejection of his proposed fence, stating "Rejected!  Privacy fences are not permitted per covenants.  Must be open picket style – Resubmit."  (Appellant's App. p. 208).

Seeking clarification from the Architectural Control Committee regarding the perceived conflict between its published policies on fences and the rejection of his proposed fence, Wright attended the Architectural Control Committee meeting on July 10, 2012.  As he failed to receive any guidelines during the meeting, Wright, now represented by counsel, requested copies of the Architectural Control Committee's Minutes and Resolutions documenting modifications to the published Architectural Policies.  After several requests, Wright finally obtained 715 pages of minutes and other corporate documents in August 2012.  Despite its volume, these documents did not contain any revisions to the published Architectural Policies.

Immediately after the meeting of July 12, 2012, Wright submitted a second fence proposal which complied with the Architectural Control Committee's requirements set forth in its rejection letter of June 19, 2012, by providing for a one-half inch gap in the fence boards, indicating an open picket style.  This second proposal was also rejected by the Committee because "such gaps must be one and one-half inches, at a minimum between the open-style picket fence boards."  (Appellant's App. p. 196).  Despite the Architectural Control Committee's rejection, Wright erected his fence on August 20, 2012, in a closed picket style.

On January 9, 2013, the Association filed its Complaint to enjoin Wright and demand removal of the fence from his Property.  On September 16, 2013, the Association

4

filed its motion for partial summary judgment seeking judgment against Wright for having violated the Restrictive Covenants. On November 18, 2013, Wright filed its Response to the Association's motion for partial summary judgment, as well as his own motion for partial summary judgment in which he asserted that the Architectural Control Committee had failed to establish and administer its Architectural Policies reasonably, fairly, and in good faith. On January 31, 2014, the Association filed its Reply to Wright's motion for summary judgment. In its designation of evidence, the Association submitted a revised Architectural Policy for fences, which has purportedly been effective since September 27, 2011. These revised policies reflect:

> 1. FENCES: Fences must be commercial-grade wooden or poly vinyl construction and may not exceed 6 feet high unless otherwise approved. Poly vinyl fences shall be of earth tone colors and must conform aesthetically to the home. The finish on wooden fences must be paint, stain or natural earth tone color and must conform aesthetically with the home. All fence posts must be either integral to the fence structure or face the interior of the fence; external posts are prohibited. Fencing cannot block the line of sight to the lake of any house on a lot contiguous to the lakes in the community. Closed picket style is not allowed. Convex style shadow box fencing, subject to the final approval of the Architectural Committee will be allowed on Lots 175 through 186 and Lots 193 through 195. Fencing cannot extend forward of the back line of a dwelling. All fencing must be maintained in a high state of repair. (Section 5.1 of Covenants).

(Appellant's App. p. 253).

On March 5, 2014, the trial court conducted a hearing on the parties' respective motions for summary judgment. On March 18, 2014, the trial court entered summary judgment in favor of the Association, and denied Wright's motion for summary judgment. Concluding that Wright had constructed the fence without first obtaining approval from the Architectural Control Committee, the trial court ordered the removal of

5

the fence within forty-five days of the issuance of its Judgment. On May 14, 2014, at Wright's request, the trial court granted a stay of execution pending resolution of this appeal.

Wright now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Standard of Review*

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). "A fact is material if its resolution would affect the outcome of the case, and an issue is genuine if a trier of fact is required to resolve the parties' differing accounts of the truth . . . , or if the undisputed facts support conflicting reasonable inferences." *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009).

In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id*. at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id*. at 608. The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id*. When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of

6

action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id.*

We observe that, in the present case, the trial court entered findings of fact and conclusions of law in support of its Judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *Id.* However, such findings offer this court valuable insight into the trial court's rationale for its decision and facilitate appellate review. *Id.*

## II. *Analysis*

Contending that the trial court erred in awarding summary judgment to the Association, Wright maintains that the fence meets the Restrictive Covenants' requirement of being "in harmony of external design," and, therefore, the Architectural Control Committee's interpretation of the Restrictive Covenants' language was unreasonable, capricious, and arbitrary.

A restrictive covenant is defined as an agreement between a grantor and a grantee in which the grantee agrees to refrain from using her property in a particular way. *Holliday v. Crooked Creek Vills. Homeowners Assoc., Inc.*, 759 N.E.2d 1088, 1092 (Ind. Ct. App. 2001). One purpose of restrictive covenants is to protect or enhance the value of property by controlling the nature and use of the land subject to the provisions of the covenant. *Johnson v. Dawson*, 856 N.E.2d 769, 772 (Ind. Ct. App. 2006). Covenants are a form of express contract, so we apply the same rules of construction. *Id.* Construction of the language of a written contract is a pure question of law that we review *de novo*. *Id.*

7

Although Indiana law permits restrictive covenants, they are disfavored and will not be enforced if adverse to public policy. *Id*. If the language is clear and unambiguous, we give the language its plain, usual, and ordinary meaning. *Id*. at 773. When interpreting restrictive covenants, we strictly construe the terms, and all ambiguities are to be resolved in favor of the free use of property. *Renfro v. McGuyer*, 799 N.E.2d 544, 547 (Ind. Ct. App. 2003), *trans. denied*. We determine the intent of the covenanting parties from the specific language and the parties' situation when the covenant was made. *Johnson*, 856 N.E.2d at 772. We do not read specific words and phrases exclusive of the other provisions of the covenants; rather, we determine the parties' intentions from the contract read in its entirety. *Id*. We construe contractual provisions so as to harmonize the agreement and not render any terms ineffective or meaningless. *Id*.

Paragraph 5.1 of the Restrictive Covenants provides that

5.1. No building, fence, . . . shall be commended, erected, or maintained upon a lot, . . . until the plans and specifications showing the structure's nature, kind, shape, height, materials and location are submitted and approved by the Committee in writing as to the structure's harmony of external design and location in relation to surrounding structures and topography in the Subdivision[.]

(Appellant's App. p. 24). Analyzing the language of the covenant, it is unambiguously clear the drafters did not allow a property owner to erect a fence on a property without prior approval from the Architectural Control Committee. As it is undisputed that Wright failed to get approval before constructing the fence on his Property—regardless of the specific design guidelines—he is in violation of the Restrictive Covenants and the trial

8

court could order the removal of the fence. *See Drenter v. Duitz*, 883 N.E.2d 1194, 1203 (Ind. Ct. App. 2008), *reh'g denied*.

While we are not unsympathetic to Wright's argument that the Restrictive Covenants' guideline of harmonization of external design is ambiguous and the Architectural Control Committee's action capricious, we cannot award relief on that basis. When a resident believes that his or her request was denied by an architectural control committee in violation of a restrictive covenant, it is more appropriate to seek declaratory relief pursuant to Ind. Code § 34-14-1-1 *et seq. See Little Beverage Co., Inc. v. DePrez*, 777 N.E.2d 74, 83-84 (Ind. Ct. App. 2002), *trans. denied*. The purpose of a declaratory judgment is to quiet and stabilize legal relations and thereby provide a remedy in a case or controversy when there is still an opportunity for peaceable judicial settlement. *Id*. Instead, Wright deliberately breached the Restrictive Covenants by building the fence. The unapproved fence violates the Restrictive Covenants, and it was permissible for the trial court to order its removal.

CONCLUSION

Based on the foregoing, we conclude that the trial court properly concluded that Wright violated the LaCabreah Restrictive Covenants when he erected a fence on his Property without obtaining prior approval of the Architectural Control Committee.

Affirmed.

MATHIAS, J. and CRONE, J. concur

9