# FOR PUBLICATION

ATTORNEY FOR APPELLANTS:

**LESLIE C. SHIVELY**
Shively & Associates, P.C.
Evansville, Indiana

ATTORNEY FOR APPELLEES
TABASSUM PARKAR, ARSHAD
HUSAIN, and JOHN MATTINGLY
HOMES, INC.:

**SHAWN M. SULLIVAN**
Terrell, Baugh, Salmon & Born, LLP
Evansville, Indiana

ATTORNEY FOR APPELLEE
LAKERIDGE CROSSING
HOMEOWNERS' ASSOCIATION, INC.:

**JEFFREY W. AHLERS**
Kahn Dees Donovan & Kahn, LLP
Evansville, Indiana

FILED

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WILLIAM J. HARNESS and BRIDGET V. HARNESS, | ) | |
| | ) | |
| Appellants-Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 87A04-1107-PL-380 |
| | ) | |
| TABASSUM PARKAR, ARSHAD HUSAIN, JOHN MATTINGLY HOMES, INC., and LAKERIDGE CROSSING HOMEOWNERS' ASSOCIATION, INC., | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE WARRICK SUPERIOR COURT
The Honorable Keith A. Meier, Judge
Cause No. 87D01-1103-PL-374

**April 5, 2012**

**OPINION - FOR PUBLICATION**

**BARTEAU, Senior Judge**

STATEMENT OF THE CASE

William J. Harness and Bridget V. Harness ("the Harnesses") appeal the trial court's denial of their request for injunctive relief and entry of final judgment in favor of Tabassum Parkar, Arshad Husain, John Mattingly Homes, Inc. ("JMH"), and Lakeridge Crossing Homeowners Association, Inc. ("the Association"). We affirm.

ISSUES

The Harnesses raise three issues, which we consolidate and restate as: whether the trial court erred by denying their request for injunctive relief and entering judgment in favor of Parkar, Husain, JMH, and the Association. In addition, Parkar, Husain, JMH, and the Association present a claim for appellate attorney's fees.[1]

FACTS AND PROCEDURAL HISTORY

In 1995, a real estate development company established Lake Ridge Crossing Subdivision ("Lake Ridge") in Warrick County. The company enacted restrictive covenants ("the covenants") to govern the building of homes in Lake Ridge. In addition, the company created the Association to enforce the covenants through an Architectural Review Committee ("the Committee"). Paragraph 4 of the covenants provides, in relevant part:

> No structure shall be commenced, erected, constructed or placed on any lot nor thereafter altered or changed without the approval of the Committee. In order to attempt to obtain such approval the building plans, specifications

---

[1] The Association has joined in the Appellees' Brief filed by Parkar, Husain, and JMH.

and plot plan together with other information (all hereinafter called Plan) showing the nature, kind, shape, height, materials, design, location and approximate cost of such structure and together with proposed grading and landscaping and such other information as may be reasonably required by the Committee have first been submitted to the Committee for approval. The Committee shall have the sole and exclusive discretion to approve or disapprove the Plan and in approving or disapproving the Plan, the Committee shall consider among other standards in connection with the proposed structure: the materials to be used, the ultimate aesthetic appearance, the harmony of the external design with existing improvements and other planned structures in the SUBDIVISION, the location, the proposed topographical appearance and the ground elevation of the structure. Notwithstanding the right of the Committee to exercise subjective judgment standards, the Committee shall not be arbitrary and unreasonable in withholding the approval of the Plan.

Appellants' App. p. 28.

In 2007, the Harnesses purchased a home on Lot 371 in Lake Ridge. Lot 371 is bounded by Anderson Road on the east, Blue Lake on the west, Lot 372 to the north, and Lot 370 to the south. Due to the lake's curving shoreline, Lot 370 is longer than Lot 371 on the east-west axis. When the Harnesses bought Lot 371, no home had been built on Lot 370.

In 2010, Parkar and Husain purchased Lot 370 and hired JMH to build a home on the site. JMH submitted a site plan to the Committee. The Committee rejected the site plan because, among other reasons, the proposed site plan violated minimum side yard setback requirements. The Committee invited JMH to provide a revised site plan, and JMH submitted a revised site plan in early 2011. The Committee approved the revised plan.

During the plan review process, the Harnesses learned about Parkar and Husain's site plan, and they expressed concerns to the Association. Among other concerns, the

3

Harnesses asserted that Parkar and Husain's proposed home location on Lot 370 was not in harmony with other lakefront homes in the area. Specifically, the Harnesses contended that the proposed home would be set further back from Anderson Road than other homes and would allow Parkar and Husain to look into the Harnesses' back yard from the front of their house, thereby impairing the Harnesses' privacy. On February 8, 2011, the Committee notified JMH that home construction was placed on hold pending further discussion.

The Association held a public meeting to address the Harnesses' concerns. In addition, the Harnesses submitted documents to the Association in support of their arguments. Furthermore, members of the Association's board of directors visited the site and sought advice from the Association's counsel. On March 10, 2011, the Association approved JMH's site plan, subject to the condition that Parkar and Husain's home must be located no closer to the water's edge of Blue Lake than the Harnesses' home.

The Harnesses were dissatisfied with the Association's resolution of the dispute and filed a complaint for declaratory judgment and injunctive relief against Parkar, Husain, JMH, and the Association. Parkar, Husain, and JMH filed a motion for summary judgment, and the Association also filed a motion for summary judgment. Next, the court held an evidentiary hearing on the Harnesses' request for preliminary injunctive relief. At the hearing, the parties agreed that the hearing would address both preliminary and permanent injunctive relief.

On June 29, 2011, the trial court issued findings of fact and conclusions of law denying the Harnesses' request for injunctive relief. With respect to the subjective judgment standards set forth in Paragraph 4, as quoted above, the trial court concluded:

6. In approving or disapproving building plans, the Homeowners' Association is to consider specific 'subjective judgment standards,' set forth in Paragraph 4 of the Covenants. The Covenants do not require that proposed structures be built in 'equal alignment' nor in 'harmony' of location with existing improvements and other planned structures nor do they require that privacy be considered.

7. The Homeowners' Association considered the Covenant's 'subjective judgment standards,' and made the subjective judgment that, 'the proposed location of the home must be no closer to the water's edge of Blue Lake than the distance which the home of Mr. and Mrs. Harness located on Lot 371 is to water's edge of Blue Lake, measuring from the midpoint of each lot.' (Defendants' Exhibit 'G')

8. The Homeowners' Association's subjective judgments were not arbitrary, unreasonable, or otherwise illegal.

* * * * *

10. The Court is mindful of [the] Harness[es'] concerns regarding the impact of the proposed home construction on their lake view and privacy, as well as the different subjective judgments that may be made as a result of such considerations. However, this Court will not substitute its own subjective judgment for that of the Committee which has the 'sole and exclusive discretion' to make such subjective judgments concerning the application and enforcement of the Covenant's 'subjective judgment standards.'

*Id.* at 17-18.

Also on June 29, 2011, the trial court issued an order granting summary judgment to Parkar, Husain, JMH, and the Association. Subsequently, the trial court issued a final judgment on the Harnesses' complaint. This appeal followed.

5

## DISCUSSION AND DECISION

## A. THE HARNESSES' APPEAL

The Harnesses are appealing from a negative judgment, specifically the trial court's denial of their request for a permanent injunction and subsequent entry of final judgment. A party who had the burden of proof at trial appeals from a negative judgment and will prevail only if it establishes that the judgment is contrary to law. *Hoose v. Doody*, 886 N.E.2d 83, 89 (Ind. Ct. App. 2008), *trans. denied*. A judgment is contrary to law when the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead only to one conclusion, but the trial court reached a different conclusion. *Id.* In addition, where, as here, the trial court issues findings of fact and conclusions of law, its findings and conclusions shall not be set aside unless clearly erroneous. *Id.* We review the judgment by determining whether the evidence supports the findings and whether the findings support the judgment. *Id.* We consider only the evidence favorable to the judgment and all reasonable inferences to be drawn from that evidence.[2] *Id.*

In this case, the Harnesses do not challenge any of the trial court's findings of fact. Instead, their arguments are based on construction of Lake Ridge's covenants. A restrictive covenant is an express contract between grantor and grantee that restrains the grantee's use of land. *Villas W. II of Willowridge Homeowners Ass'n, Inc. v. McGlothlin*,

---

[2] Parkar, Husain, JMH and the Association cite to the negative judgment standard, but they contend in the alternative that the trial court's grant of summary judgment in their favor is a separate ground for affirming the judgment. However, after the trial court granted summary judgment, Parkar, Husain, and the Association requested that the trial court enter a final judgment. Therefore, it is appropriate to review this case under the negative judgment standard rather than under the standard of review for the grant of summary judgment.

885 N.E.2d 1274, 1278 (Ind. 2008). Restrictive covenants are used to maintain or enhance the value of land by reciprocal undertakings that restrain or regulate groups of properties. *Id.* Covenants control many aspects of land, including what may be built on the land (fence or above ground pool), how the land may be used (private or commercial), and alienability of the land. *Id.*

Covenants are a form of express contract, and we apply the same rules of construction when a dispute arises as to the covenants' terms. *Johnson v. Dawson*, 856 N.E.2d 769, 772 (Ind. Ct. App. 2006). When courts are called upon to interpret restrictive covenants, they are to be strictly construed, and all doubts should be resolved in favor of the free use of property and against restrictions. *Id.* at 773. The covenanting parties' intent must be determined from the specific language used and from the situation of the parties when the covenant was made. *Id.* In addition, the parties' intentions must be determined from the contract read in its entirety. *Id.* We attempt to construe contractual provisions so as to harmonize the agreement and so as not to render any terms ineffective or meaningless. *Id.*

Here, the Harnesses argue that Paragraph 4 of the covenants, as quoted above, required the Association to ensure that Parkar and Husain's home was situated in alignment with the other homes along Anderson Road and that the Harnesses' lake view was not obstructed. Their argument is contradicted by Paragraph 4's plain language. According to that provision, the Association is obligated to "*consider* . . . the location [and] the proposed topographical appearance" of all proposed homes in Lake Ridge. Appellants' App. p. 28 (emphasis added). Nevertheless, after undertaking this

7

deliberative process, the Association retains "sole and exclusive discretion" to approve site plans, so long as it does not reject any plans in "an arbitrary and unreasonable" manner. *Id.*

In this case, the record establishes that the Association, through the Committee, initially rejected JMH's site plan for violating side yard setback requirements and subsequently approved a revised plan. After the Harnesses raised objections, the Association put Parkar and Husain's house on hold and reopened the process to consider the Harnesses' objections. Specifically, the Association held a meeting to discuss JMH's site plan. The Harnesses, Parkar, Husain, members of the Association's board of directors, and several Lake Ridge residents attended the meeting. After the meeting, the Harnesses submitted to the Association a written statement of their position, with supporting documents. In addition, William Harness had discussions with Alex Copeland, the president of the Association's board of directors. The Association also sought advice from its counsel. Finally, the Harnesses met with representatives of the Association and JMH at the site. This evidence supports the trial court's findings of fact regarding the Association's approval of the site plan and establishes that the Association engaged in the deliberative process required by Paragraph 4 of the covenants.

Furthermore, the trial court's findings of fact support the trial court's conclusion of law that the Association did not act in an arbitrary and unreasonable manner. Upon receiving notice of the Harnesses' objections, the Association established a process to allow the Harnesses to be heard. In addition, the Association approved JMH's site plan with an added condition that attempted to address the Harnesses' objections.

8

The Harnesses' argument that the Association was required to act upon their objections to Parkar and Husain's site plan would effectively invalidate Paragraph 4's grant of discretion to the Association to approve projects. Instead, anytime a Lake Ridge resident raised an objection and cited to the subjective judgment standards, the Association would be required to accept the objection and deny the proposed project as submitted. We cannot apply the covenants in such a manner as to render a provision invalid. *See City of Lawrenceburg v. Milestone Contractors, L.P.*, 809 N.E.2d 879, 883 (Ind. Ct. App. 2004) ("Construction of contract language that would render any words, phrases, or terms ineffective or meaningless should be avoided."), *trans. denied*. Thus, the trial court's findings of fact and conclusions of law related to the Association's application of the subjective judgment standards are not clearly erroneous.

The Harnesses argue that they were entitled to injunctive relief because the undisputed evidence establishes that Parkar and Husain's house will impair their view of the lake and detrimentally impact the market value of their house. We consider several factors in determining the propriety of permanent injunctive relief, including whether the plaintiff has succeeded on the merits. *Drees Co. v. Thompson*, 868 N.E.2d 32, 41 (Ind. Ct. App. 2007), *trans. denied*. As we have discussed above, the Harnesses have not succeeded on the merits of their claim because their interpretation of the covenants is erroneous. Therefore, they are not entitled to a permanent injunction.

We conclude that the Harnesses have failed to establish that the trial court's entry of judgment in favor of Parkar, Husain, JMH, and the Association is contrary to law.

## B. APPELLATE ATTORNEY'S FEES

This Court may, in its discretion, assess damages, including attorney's fees, against an appellant if an appeal is frivolous or in bad faith. Ind. Appellate Rule 66(E). We will assess appellate damages only against an appellant who in bad faith maintains a wholly frivolous appeal. *Harness v. Schmitt*, 924 N.E.2d 162, 168 (Ind. Ct. App. 2010). A strong showing is required to justify an award of appellate damages, and the sanction is not imposed to punish mere lack of merit, but something more egregious. *Id.*

Here, Parkar, Husain, JMH, and the Association contend that the Harnesses' appeal lacks legal plausibility and that the Harnesses have misstated material facts. Although the Harnesses do not prevail in this appeal, we cannot conclude that this appeal is frivolous or that they have maintained this appeal in bad faith. Consequently, we deny the request for appellate attorney's fees. *See id.* at 169 (declining to award appellate attorney's fees to an appellee because the appellant's claims were not "utterly devoid of plausibility").

## CONCLUSION

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

ROBB, C.J., and BAKER, J., concur.

10