## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 13 2016, 8:01 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Shaun T. Olsen | Ray L. Szarmach |
| OlsenCampbell Ltd. | Merrillville, Indiana |
| Merrillville, Indiana | |

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Castlewood Property Owners Association, Inc., | May 13, 2016 |
| *Appellant-Plaintiff,* | Court of Appeals Case No. 45A03-1508-PL-1105 |
| v. | Appeal from the Lake Superior Court |
| Leticia Guerra-Danko, | The Honorable William E. Davis, Judge |
| *Appellee-Defendant.* | Trial Court Cause No. 45D05-1007-PL-62 |

**Baker, Judge.**

Castlewood Property Owners Association, Inc. (Castlewood) appeals the trial court's ruling in favor of Leticia Guerra-Danko on Castlewood's complaint for declarative and injunctive relief. Guerra-Danko is a homeowner in the Castlewood subdivision who added siding to her home before obtaining approval from the Architectural Review Committee (ARC) and refused to remove it after the ARC refused to approve the siding. Finding a dearth of evidence establishing that the siding would negatively affect home values in the neighborhood or that it presented aesthetic problems, we affirm.[1]

## Facts

Castlewood is a subdivision with Protective Covenants that run with the land. Section 12 of the Protective Covenants provides as follows:

> ARCHITECTURAL CONTROLS. No building . . . shall be commenced, erected, or maintained, nor shall any change or alteration therein be made except interior alterations, until the construction plans and specifications, showing the nature, kind, shape, height and materials, color scheme, location on Lot and approximate cost . . . shall have been submitted to and approved in writing by the Architectural Review Committee. The Architectural Review Committee shall, in its sole discretion, have the right to refuse to approve any such construction plans or specifications . . . for aesthetic or other reasons and in so passing upon such construction plans . . . the Architectural Review Committee shall have the right to take into consideration the suitability of the proposed Building . . . with the surroundings,

---

[1] While the majority of the Court agrees that this appeal should be resolved in favor of Guerra-Danko, we do so for different reasons.

and the affect [sic] of the Building . . . on the outlook from adjacent or neighboring properties.

Appellant's App. p. 26. Among the purposes of the Protective Covenants are:

> to protect each and every Owner . . . against such use of Lots in This Subdivision as may depreciate the value of their property; to guard against the erection thereon of buildings built of improper or unsuitable materials . . . . It is understood and agreed that the purpose of architectural control is to secure an attractive harmonious residential development having continuing appeal.

*Id.* at 20. Castlewood claims that since 1998, it has not allowed the use of vinyl or aluminum siding on residences, but nothing explaining this prohibition is provided in writing to new homeowners.

In May 2009, Guerra-Danko purchased a residence in Castlewood. In October 2009, Guerra-Danko discovered termite damage in the residence and determined that the cedar siding on the exterior of her residence needed to be replaced. She proceeded with plans to replace the siding, including obtaining a permit and purchasing the siding, but did not submit a request to the Architectural Review Committee (ARC) before construction began. Guerra-Danko selected "rough cedar finish siding," which is molded from cedar clapboards, but evidently is classified as vinyl siding.[2] Appellee's Br. p. 2.

---

[2] In the decades after it was first introduced in the 1950s, vinyl siding had many cosmetic problems. Since then, however, "[o]ngoing changes in the product's chemistry and installation techniques have improved its acceptance and furthered its acceptance by builders and homeowners. In fact, vinyl has captured 32 percent of the U.S. siding market for new homes, with no end in sight to its growing popularity." Mark Feirer, *For*

[4]     The President of Castlewood, Christine McCulloch, noticed a dumpster in Guerra-Danko's driveway and sent her an email questioning what was occurring at the residence. McCulloch and Guerra-Danko engaged in several conversations, in person and over email, and eventually Guerra-Danko submitted a request to the ARC for approval of the siding. The ARC, without holding a meeting, offering Guerra-Danko an opportunity to make her case, or even holding a vote that was memorialized in a writing, denied the request on October 30, 2009.

[5]     On July 26, 2010, Castlewood filed a complaint against Guerra-Danko, seeking a declaration that she had violated the Protective Covenants, an injunction requiring compliance with the Protective Covenants, and attorney fees and costs. Castlewood filed a motion for summary judgment on February 13, 2012, which the trial court denied on May 18, 2012, finding multiple issues of fact preventing summary judgment. On May 29, 2015, the trial court held a bench trial on the complaint, and on July 7, 2015, the trial court entered judgment in favor of Guerra Danko, finding as follows:

> [a]fter a review of all the facts and circumstances of this matter the Court has determined that the Plaintiff has failed to prove by

---

the Love of Vinyl Siding, THIS OLD HOUSE, http://www.thisoldhouse.com/toh/article/0,,266296,00.html (last visited Mar. 14, 2016). Indeed, the "vast improvements" in technology causes vinyl siding to have a "positive effect" on home values in most areas. Fran J. Donegan, Vinyl Siding, THIS OLD HOUSE, http://www.thisoldhouse.com/toh/article/0,,213532,00.html (last visited Mar. 14, 2016). Typically, new vinyl siding products "have a low-gloss finish that more closely resembled painted wood. Most manufacturers also offer realistic-looking grain patterns and have improved the look of trim pieces. . . . Those with a simulated wood grain are meant to imitate rough-sawn wood that's been stained." Id.

a greater weight of the evidence that the covenants here are unambiguous and/or do not violate public policy.

Appellant's App. p. 14. Castlewood now appeals the denial of its summary judgment motion and the final judgment entered in favor of Guerra-Danko.

# Discussion and Decision

## I. Summary Judgment

First, Castlewood argues that the trial court should have granted its motion for summary judgment. Our standard of review on summary judgment is well settled:

> We review summary judgment de novo, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp,* 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* (internal citations omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014).

In this case, there were multiple issues of material fact rendering summary judgment inappropriate. Among other things, the following issues were disputed: whether vinyl siding is, in fact, a prohibited item pursuant to the

Protective Covenants; and whether the ARC's application of the Protective Covenants to Guerra-Danko's situation was unreasonable. Indeed, Castlewood itself concedes that "whether or not an [ARC's] approval was reasonable is a question of fact to be determined in light of the surrounding circumstances." Appellant's Br. p. 22. Consequently, we decline to reverse the trial court's order denying Castlewood's summary judgment motion.[3]

## II. Final Judgment

[8] Castlewood also contends that the trial court erroneously granted judgment in favor of Guerra-Danko following the bench trial. Initially, we note that because Castlewood is appealing from a negative judgment, it must establish that the trial court's judgment is contrary to law. *Pinnacle Healthcare, LLC v. Sheets*, 17 N.E.3d 947, 953 (Ind. Ct. App. 2014). A judgment is contrary to law only if "the evidence in the record, along with all reasonable inferences, is without conflict and leads unerringly to a conclusion opposite that reached by the trial court." *Id.*

[9] It appears that Indiana law is silent regarding the amount of deference to be afforded to a decision of an ARC, or similar homeowner's association-related entity, that certain residential modifications should or should not be permitted. Castlewood suggests that we apply a reasonableness standard, citing to caselaw

---

[3] The trial court later denied a summary judgment motion filed by Guerra-Danko, which further demonstrates the presence of issues of material fact rendering a trial necessary.

from multiple other jurisdictions in support. *See, e.g.*, *Bailey Dev. Corp. v. MacKinnon-Parker, Inc.*, 397 N.E.2d 405, 411-12 (Ohio Ct. App. 1977) (holding that subdivision's decisions about building restrictions "must be measured against the standards of good faith and reasonableness"); *LeBlanc v. Webster*, 483 S.W.2d 647, 649 (Mo. Ct. App. 1972) (finding that an ARC's consent to or rejection of residential alterations must be reasonably exercised). We agree that a reasonableness standard is appropriate, and will now consider whether, in this case, the ARC's decision was reasonable.

[10] Initially, we note that the so-called "prohibition" against vinyl siding is not a policy that has been memorialized in a writing. There was evidently a neighborhood agreement reached in 1998 to that effect, but homeowners purchasing residences in Castlewood since 1998 have no way of knowing about this informal prohibition. We do not go so far as to require that community guidelines such as this vinyl siding prohibition be written and provided to all community members, but we certainly believe that it would be the better practice to do so.

[11] As noted above, among the purposes of the Protective Covenants are desires to protect the value of homes in the neighborhood and to maintain harmonious aesthetics in the Castlewood community. In this case, there was absolutely no evidence presented, expert or otherwise, remotely tending to show that Guerra-Danko's selected siding would have a negative effect on property values or that it did not otherwise mesh with the neighborhood aesthetic.

[12] Castlewood's only two witnesses were Guerra-Danko and McCulloch. McCulloch testified that, in deciding whether to approve a requested modification, the ARC considers how the proposed modification would "affect[] the values of our homes and our community." Tr. p. 79. She admitted, however, that no one on the ARC is a realtor or in any way involved in the real estate business. Tr. p. 88-92 (testifying that the ARC was comprised of a flight attendant, an engineer, an administrative assistant, an employee of a car dealership, and a teacher). Castlewood offered no testimony from anyone involved with the real estate business in an effort to establish that vinyl siding would have a negative effect on home values in the neighborhood. And McCulloch herself did not testify as to why, specifically, Guerra-Danko's siding presented an aesthetic problem. This dearth of evidence leads unerringly to a conclusion that the ARC did not exercise its powers under the Protective Covenants in a reasonable manner. We certainly do not find that the trial court's order entering judgment in favor of Guerra-Danko is contrary to law. Consequently, Castlewood's appeal is unavailing.

[13] The judgment of the trial court is affirmed.


May, J., concurs in result with separate opinion.
Brown, J., concurs in part and dissents in part with separate opinion.

ATTORNEY FOR APPELLANT

Shaun T. Olsen
OlsenCampbell Ltd.
Merrillville, Indiana

ATTORNEY FOR APPELLEE

Ray L. Szarmach
Merrillville, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Castlewood Property Owners Association, Inc., | Court of Appeals Case No. 45A03-1508-PL-1105 |
| *Appellant-Plaintiff,* | |
| v. | |
| Leticia Guerra-Danko, | |
| *Appellee-Defendant.* | |

**May, Judge, concurring in result.**

[14] I would affirm the judgment in favor of Guerra-Danko, but I believe she was entitled to summary judgment. Accordingly, I concur in the result only.

[15] At the heart of this dispute is a covenant restricting how an owner may use her property. "A restrictive covenant is an express contract between grantor and grantee that restrains the grantee's use of land." *Harness v. Parkar*, 965 N.E.2d 756, 760 (Ind. Ct. App. 2012). Covenants are "used to maintain or enhance the value of land" by controlling such aspects as "what may be built on the land (fence or above ground pool), how the land may be used (private or commercial), and alienability of the land." *Id*. at 761.

[16] Because a covenant is a contract, we interpret covenants using the same rules of construction. *Id.* If we must interpret covenants, "they are to be strictly construed, and all doubts should be resolved in favor of the free use of property and against restrictions." *Id*. We must determine the intent of those who drafted the covenant from "the specific language used and from the situation of the parties when the covenant was made." *Id*. We must consider the covenant in its entirety and construe the provisions in a manner that harmonizes them, rather than one that renders some terms ineffective or meaningless. *Id*.

[17] "[M]atters of contract interpretation are particularly well-suited for *de novo* appellate review, because they generally present questions purely of law." *In re Indiana State Fair Litigation*, --- N.E.3d ----, 2016 WL 348155 *2 (Ind. 2016) (internal citations and quotations omitted). When ambiguity arises from the language used in the contract, then the determination of its meaning is a

question of law for the court. *AM General LLC v. Armour*, 46 N.E.3d 436, 440 (Ind. 2015).

[18] The full text of the covenant at issue provides:

> 12.    ARCHITECTURAL CONTROLS.  No building, fence, wall or other structure shall be commenced, erected, or maintained, nor shall any change or alteration therein be made except interior alterations, until the construction plans and specifications, showing the nature, kind, shape, height and materials, color scheme, location on Lot and approximate cost of such Building or other Structure, and the grading plan (including a stake survey showing the elevation of all four corners of the Lot) and the landscape plan of the Lot to be built upon shall have been submitted to and approved in writing by the Architectural Review Committee.  The Architectural Review Committee shall, in its sole discretion, have the right to refuse to approve any such construction plans or specifications, grading plan, or landscape plan, for aesthetic or other reasons and in so passing upon such construction plans and specifications, grading plan, or landscape plan, the Architectural Review Committee shall have the right to take into consideration the suitability of the proposed Building or other Structure with the surroundings, and the affect [sic] of the Building or other Structure on the outlook from adjacent or neighboring properties.  In no instance shall a Building or a design identical to an adjacent Building be permitted except as permitted by the Architectural Review Committee.

(App. at 26.)

[19] In its order denying summary judgment to Castlewood, the court noted:

> It can not [sic] be said that the Covenants prevent replacing damaged siding without approval of the Architectural Review Committee [ARC] as a matter of law.  The section in question

> Clause IV 12 deals with construction of buildings, structures, and walls. It speaks of grading, and landscaping, and designs, and plans. But [it] is Moot [sic] as to replacing siding or anything else on the structure that is already there.

(*Id*. at 13.) When denying summary judgment to Guerra-Danko, the court found "there remain genuine issues of material fact that should be resolved by the fact finder." (*Id*. at 8.) Indeed, even after trial, the court found Castlewood "failed to prove by a greater weight of the evidence that the covenants here are unambiguous . . . ." (*Id*. at 14.)

[20] I agree there were many questions of fact that could have been determined in this case.[4] But those questions of fact were not material to the dispositive issue – whether the covenant required Guerra-Danko to obtain approval of the ARC prior to replacing her siding. *See In re Indiana State Fair Litigation*, 2016 WL 348155 ("The meaning of a contract is a question for the factfinder, precluding summary judgment, only where interpreting an ambiguity requires extrinsic evidence.").

[21] I believe the trial court correctly determined Paragraph 12 was ambiguous as to whether it applied only to new buildings or structures.[5] Because all doubts

---

[4] Indeed, my colleague's opinion addresses one question of fact: whether the ARC exercised its power in a reasonable manner. In concluding the ARC did not act reasonably, Judge Baker notes the record contains no evidence the neighborhood would experience a negative financial or aesthetic impact because of the siding Guerra-Danko selected. *See* Slip op. at 7, 8. Because the record is silent as to the history of and improvements to vinyl siding, I would omit footnote 1. *See id*. at 3.

[5] Castlewood notes *Wedgewood Cmty. Ass'n, Inc. v. Nash*, 781 N.E.2d 1172 (Ind. Ct. App. 2003), which involved a similarly worded covenant. The issue in that case, however, was whether the doctrine of unclean

about the meaning of a covenant are to be "be resolved in favor of the free use of property and against restrictions," *Harness*, 965 N.E.2d at 761, I would construe the paragraph against Castlewood and hold Guerra-Danko did not need ARC approval before replacing her siding.

[22] For all these reasons, I respectfully concur in the result.

---

hands prohibited Wedgewood from enforcing the covenant. Neither Wedgewood nor Nash asserted the covenant was ambiguous. *Wedgewood* therefore does not control.

| | |
|---|---|
| Castlewood Property Owners Association, Inc., <br><br> *Appellant-Plaintiff*, <br><br> v. <br><br> Leticia Guerra-Danko, <br><br> *Appellee-Defendant*. | Court of Appeals Case No. <br> 45A03-1508-PL-1105 |

**Brown, Judge, concurring in part and dissenting in part.**

Although I concur with Judge Baker's conclusion to affirm the trial court's decision denying Castlewood's summary judgment motion, I respectfully dissent from his conclusion that the court's judgment in favor of Guerra-Danko is not contrary to law. The court ruled in its order of July 7, 2015, that Castlewood "has failed to prove by a greater weight of the evidence that the covenants here are unambiguous and/or do not violate public policy." Appellant's Appendix at 14. Initially, I note that in reviewing the record I could not find any matters of public policy which were litigated at trial, and

indeed the court did not suggest any specific tenet of public policy which was violated by the Protective Covenants and specifically Section 12 therein. Accordingly, I do not believe that public policy provides a basis on which to rule in favor of Guerra-Danko.

Regarding the court's conclusion that Section 12 was ambiguous, I disagree. That section states in relevant part that:

> No *building*, fence, wall or other structure shall be commenced, erected, *or maintained, nor shall any change or alteration therein be made* except interior alterations, until the construction plans and specifications, showing the nature, kind, shape, height and *materials* . . . shall have been submitted to and approved in writing by the Architectural Review Committee.

Appellant's Appendix at 26 (emphases added). In my view, Section 12 unambiguously requires that projects to maintain, change, or alter buildings, except for interior alterations, be reviewed and approved by the ARC and that materials used are among the factors taken into consideration by the ARC in reviewing such projects.

Judge Baker reasons that courts should review decisions of the ARC under a reasonableness standard and concludes that there was a "dearth of evidence" presented at trial by Castlewood regarding the bases for its decision, which "leads unerringly to a conclusion that the ARC did not exercise its power under the Protective Covenants in a reasonable manner." *Supra* at 8. However, McCulloch testified that in 1998, eleven years prior to the facts leading to this suit, the ARC conducted a survey of the homeowners asking whether vinyl

siding should be allowed in the neighborhood, and the results of the survey showed that a majority of homeowners believed vinyl siding should not be allowed. (See Transcript at 18, 22) The ARC thereafter enforced such a prohibition, including on two previous occasions. (Transcript at 22) In this regard, Judge Baker observes that "homeowners purchasing residences in Castlewood since 1998 [had] no way of knowing about this informal prohibition." *Id.* at 7. Had Guerra-Danko brought the matter before the ARC prior to beginning the project, as required by Castlewood's Protective Covenants, she would have learned of this. Further, it is undisputed that on September 16, 2009, prior to the commencement of the project, Guerra-Danko received a letter from Castlewood which specifically stated that "[a]ny structural changes or changes to the outside of a home, *siding*, fences, pools, etc., must be submitted and approved by the [ARC]." Exhibit 10 (emphasis added). Under such circumstances, I cannot say that the ARC's decision to prohibit Guerra-Danko from using vinyl siding on her home was unreasonable.

[26] I would find that the court's July 7, 2015 order is contrary to law and would reverse and remand with instructions to enter judgment in favor of Castlewood as requested in its complaint.