

FILED
Sep 13 2016, 6:17 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Scott C. Andrews
Andrews Law Office, LLC
Columbus, Indiana

ATTORNEY FOR APPELLEE

John A. Stroh
Sharpnack Bigley Stroh &
Washburn LLP
Columbus, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Marvin Hamilton and
Linda Hamilton,

*Appellants-Defendants,*

v.

Schaefer Lake Lot Owners
Association, Inc.,

*Appellee-Plaintiff*

September 13, 2016

Court of Appeals Case No.
03A05-1511-SC-1906

Appeal from the Bartholomew
Superior Court

The Honorable James D. Worton,
Special Judge

Trial Court Cause No.
03D02-1309-SC-2182

**Baker, Judge.**

Marvin and Linda Hamilton (collectively, the Hamiltons) appeal the trial court's judgment entered against them and in favor of Schaefer Lake Lot Owners Association, Inc. (the Association). As consolidated and restated, the Hamiltons contend that they are not members of the Association and do not owe money for annual and special assessments, and that the statute of limitations bars claims for assessments made prior to 2008. Finding that the Hamiltons are members of the Association and therefore owe money for the assessments, and that the statute of limitations does not bar any of the Association's claims, we affirm.

## Facts

Schaefer Lake Addition was developed by Albert and Helen Schaefer in three sections: Section 1 was platted in 1960, Section 2 was platted in 1961, and Section 3 was platted later. In 1971, the Association was formed.

In 1973 or 1974, the Hamiltons purchased lot 89 in Section 2 of Schaefer Lake Addition. At the time of purchase, their property was subject to the Schaefer Lake Addition Covenants (Covenants). The Covenants provided the following:

> These covenants are to run with the land and shall be binding on all parties and all persons claiming under them for a period of twenty five years from the date this plat is recorded, after which time said covenants shall be automatically extended to successive periods of ten years *unless an instrument signed by a majority of the then owners of the lots has been recorded agreeing to change said covenants in whole or in part.*

Defendant's Ex. 1 (emphasis added). The Covenants did not mention requirements relating to membership in the Association and did not specify that lot owners have to pay any assessments to the Association.

In 1976, the Association amended its Articles of Incorporation, and in 1977, it filed the Amended Articles of Incorporation (Amended Articles) with the Secretary of State. The Amended Articles provided that a lot owner is entitled to membership in the Association and "said membership [is] predicated upon the remittance of the initial membership fee of $15.00." Defendant's Ex. 3. Also in 1977, Albert and Helen Schaefer recorded additional covenants entitled Declaration of Covenants (Declaration). The Declaration provided that any lots owned by anyone other than the Schaefers may be subject to the Declaration by voluntarily executing and recording a Supplementary Declaration of Covenant. The Schaefers could also subject additional lots owned by them to the Declaration by providing in a deed, original platting, or additions to the plats, that the lots be subject to, owned, held, and transferred under the provisions of the Declaration. The Declaration provided that any new owner must pay an initial membership fee of fifteen dollars, and that this fee is to be paid upon change of legal ownership, within thirty days of the date of transfer of legal title.

In 1996, owners of thirty of the fifty-eight Section 2 lots voted to amend the Covenants that related to Section 2. The amendment provided:

> All Lot Owners in Schaefer Lake Addition, Section 2, their assigns or successors, shall be members in Schaefer Lake Lot

Owners Associates, Inc., an Indiana Corporation, or any successor to this organization, and shall be subject to all rules and regulations thereof.

All Lots in Schaefer Lake Addition, Section 2, shall be subject to the covenants, restrictions, charges, liens, and provisions of the Declaration of Covenants executed by Albert A. Schaefer and Helen E. Schaefer, husband and wife, July 29, 1977, and recorded September 27, 1977, in the Office of the Recorder of the Bartholomew County, Indiana.

These covenants are to run with the land and shall be binding on all parties and all persons claiming under them for a period of one year from the date this plat is recorded . . . .

Plaintiff's Ex. C.

[6] In 2002, the Association adopted the Rules and Regulations of Schaefer Lake Lot Owners Associates, Inc. (Rules). The Rules provide that the Association can determine the need for and establish the amount of an annual assessment or special assessment against each lot.

[7] On September 19, 2013, the Association filed a complaint against the Hamiltons in small claims court for non-payment of annual and special assessments. Following a July 10, 2015, bench trial, the court found for the Association, awarding a judgment of $4,240 and attorney fees of $1,760 for a total of $6,000 plus court costs of $91 and post-judgment interest. The Hamiltons now appeal.

# Discussion and Decision

The Hamiltons raise four issues, which we consolidate and restate as follows: whether the Hamiltons are members of the Association and, if so, whether they owe dues and assessments, and whether the statute of limitations has run on the action.

# I. Standard of Review

Small claims court judgments are "subject to review as prescribed by relevant Indiana rules and statutes." Ind. Small Claims Rule 11(A). Pursuant to Trial Rule 52(A), the clearly erroneous standard applies to appellate review of facts determined in a bench trial with due regard given to the opportunity of the trial court to assess witness credibility. This deferential standard of review is particularly important in small claims actions, where trials are designed to speedily dispense justice by applying substantive law between the parties in an informal setting. *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006). Parties in a small claims court bear the same burdens of proof as they would in a regular civil action on the same issues. Ind. Small Claims Rule 4(A). It is incumbent upon the party who bears the burden of proof to demonstrate that it is entitled to the recovery sought. *LTL Truck Serv., LLC v. Safeguard, Inc.*, 817 N.E.2d 664, 668 (Ind. Ct. App. 2004). We consider evidence in the light most favorable to the judgment, together with all reasonable inferences to be drawn therefrom. *Id.* at 667. We will reverse a judgment only if the evidence leads to but one conclusion and the trial court reached the opposite conclusion. *Id.*

# II. Association Membership and Assessments

The Hamiltons argue that they are not members of the Association because the Covenants did not require membership in a lot owners' association and did not require payment of dues and assessments. They also argue that they are not members of the Association because they never signed or agreed to the 1996 amendments or voluntarily joined the Association.

Restrictive covenants serve in part "to maintain or enhance the value of land by controlling the nature and use of lands subject to a covenant's provisions." *Grandview Lot Owner Ass'n, Inc. v. Harmon*, 754 N.E.2d 554, 557 (Ind. Ct. App. 2001) (internal quotation marks and citations omitted). They are a form of express contract recognized under the law. *Id.* As such, we apply the same rules of construction when a dispute arises as to a covenant's terms. *Harness v. Parkar*, 965 N.E.2d 756, 760 (Ind. Ct. App. 2012). Restrictive covenants must be strictly construed, and all doubts should be resolved in favor of the free use of property and against restrictions. *Id.* The covenanting parties' intent must be determined from the specific language used and from the situation of the parties when the covenant was made. *Id.*

The record here establishes that the Hamiltons purchased their lot subject to the Covenants. The Covenants expressly provided that the covenants are to run with the land and are binding on all parties subject to them. The Covenants also expressly provided that the Covenants could be amended through an instrument signed by a majority of the then lot owners and recorded. In 1996, a

majority of lot owners did vote to amend the Covenants; the amendment provided that all lot owners are members of the Association and subject to the Association's rules and regulations. In 2002, the Association adopted rules that allow it to establish annual and special assessments against each lot.

[13] We disagree with the Hamiltons' assertions that the amendment was outside the scope of the Covenants' intended purpose and that the amendment was an attempt "to force an owner to join a lot owner's association." Appellant's Br. p. 7. The Covenants provided that they could be changed after twenty-five years had run, and the 1996 amendments were passed after this allotted time. The Covenants did not specify or restrict what changes could be made, but instead left any changes to the decision of the majority of lot owners. Thus, because the amendment was enacted by a majority of lot owners, it was within the scope of the Covenants' intended purpose. Further, the amendment did not "force" the Hamiltons to become Association members; they bought their lot subject to the Covenants, thereby agreeing to be subject to the restrictions and regulations in the Covenants and any approved changes to the Covenants.

[14] Nor has the fact that the Hamiltons have not paid a fifteen-dollar initial membership fee prevented them from becoming Association members. Although the Amended Articles provide that membership is predicated on the fee, this provision applied before all lot owners were required to be Association members. The 1996 amendments that make Association membership mandatory do not mention any fee for membership, thereby making all lot owners members regardless of any initial fee. Accordingly, their argument that

they are not Association members because they did not pay the membership fee fails.

[15] Finally, we are not persuaded by the Hamiltons' argument that the Association did not prove by a preponderance of the evidence that the assessments they owe were validly approved. The Rules provide that the Association's Board of Directors determines the need for and establishes the amount of an annual or special assessment, and that a majority of a quorum of members in good standing must approve the assessments. The Rules provide that the Association's annual meeting is to take place in January, with the date, time, and place designated by the Board, and that special meetings may take place at the discretion of the Board. The Board must give notice of each meeting in writing by mailing or by placing a notice in the mailbox of the members not less than one week prior to a meeting.

[16] We find that the Association presented sufficient evidence to show that the assessments the Hamiltons owe were validly approved. Christina Moore, the current Association president, who has been a resident of Schaefer Lake for eleven years, testified that the Board always mailed a letter to each lot owner with the date, time, and location of the annual meeting, two to three weeks in advance. The letter included a copy of the current year's budget and the coming year's estimated budget, an amount of the dues owed, and a form for proxy voting. Following the meeting, the Association mailed a letter with information about what took place at the meeting and an invoice for assessments. She also testified that the Association has followed this procedure

since at least 2000, and that the Members passed an assessment each year since 2004. Marvin Hamilton was aware that the Association had an annual meeting, he received letters about the meetings, and he knew that the Association decided on assessments at the meetings. In 2003, Linda Hamilton signed and submitted a proxy vote for them for that year's annual meeting. Thus, we find that the Association met its burden of proof when establishing that the assessments were validly approved.

[17]   In sum, we agree with the trial court that, pursuant to the Association's covenants, amendments and rules, the Hamiltons are Association members and must pay their annual and special assessments.

## III.   Statute of Limitations

[18]   On appeal, the Hamiltons assert that the statute of limitations has run on any amount assessed prior to 2008. The Hamiltons did not raise the statute of limitations issue at trial. Failure to raise an issue at trial results in waiver of that issue. *Van Winkle v. Nash*, 761 N.E.2d 856, 859 (Ind. Ct. App. 2002).

[19]   Waiver notwithstanding, we find that the Association's claim is within the statute of limitations for breach of contract actions. As noted above, restrictive covenants are a form of express contract recognized under the law. *Grandview Lot Owner Ass'n, Inc.*, 754 N.E.2d at 557. An action based on a written contract must be commenced within ten years after the cause of action accrues. Ind. Code § 34-11-2-11. The Association filed its cause of action in 2013, seeking

judgment for assessments dating back to 2004, which is within the ten-year time period provided by law.

[20] The judgment of the trial court is affirmed.

Bradford, J., and Altice, J., concur.