

## IN THE
# Court of Appeals of Indiana

Keith Allison and Joan Allison,

*Appellants-Plaintiffs*

v.

Jon Roock,

*Appellee-Defendant*



FILED

Jun 21 2024, 8:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

June 21, 2024

Court of Appeals Case No.
23A-PL-3057

Appeal from the Bartholomew Superior Court

The Honorable James D. Worton, Judge

Trial Court Cause No.
03D01-2302-PL-886

**Opinion by Judge Mathias**
Judges Vaidik and Kenworthy concur.

**Mathias, Judge.**

[1] Keith and Joan Allison appeal the trial court's entry of summary judgment for Jon Roock and the court's denial of their motion for summary judgment. The Allisons present four issues for our review, which we restate as the following three issues:

> 1. Whether amendments to the restrictive covenants here can be effective immediately or only in ten-year intervals.

> 2. Whether the restrictive covenants applied to Roock's lot.

> 3. Whether a genuine issue of material fact precludes the entry of summary judgment for either party.

[2] We affirm the trial court's denial of the Allisons' motion for summary judgment, reverse the trial court's grant of Roock's motion for summary judgment, and remand for further proceedings consistent with this opinion.

## Facts and Procedural History

[3] In April 1969, four individuals established the Second Tamerix Lake Addition as a residential development in Bartholomew County. In doing so, they recorded Restrictions and Covenants applicable to all the lots within the Addition. Those Restrictions and Covenants included the following: "Each lot owner shall be responsible for maintaining his property in a well kept condition and for cutting weeds and brush, if any, at least twice yearly during the period

of May to October, whether or not a dwelling shall exist on said lot."
Appellants' App. Vol. 3, p. 144.

[4]     The Restrictions and Covenants further provided as follows:

> These covenants are to run with the land and shall be binding on all parties and all persons claiming under them for a period of thirty years from the date this plat is recorded, after which time said covenants shall be automatically extended to successive periods of ten years unless an instrument signed by a majority of the then owners of the lots has been recorded, agreeing to change the said covenants in whole or in part.

*Id.* at 146.

[5]     In January 2019, a majority of the lot owners in the Addition agreed that certain Privileges and Restrictions "be added . . . to the end of the 'Restrictions and Covenants'" applicable to all lot owners. *Id.* at 227. Those Privileges and Restrictions identified certain lots as "Lake Lots" and required the owners of the Lake Lots to be members of the Tamerix Lake Lot Owners Association. Membership in the Association, in turn, was accompanied by additional assessments and privileges.

[6]     The Allisons are the owners of lot 16/16B in the Addition, which is a Lake Lot. Roock owns lot 11, which is the lot across the street from the Allisons' lot and is not a Lake Lot. According to the Allisons, "[s]ince moving into his home" in 2021, Roock has "fail[ed] to cut weeds and brush at least twice yearly between May and October;" he has "fail[ed] to maintain his lot in a 'well kept' condition;" and he has "[p]ermitt[ed] weeds, brush, and refuse to become

overgrown" and to accumulate, which has blocked traffic lines-of-sight and enabled "vermin" to gather. *Id.* at 129.

[7] In February 2023, the Allisons filed their complaint for injunctive relief against Roock in which the Allisons sought to enforce the restrictive covenant pertaining to the maintenance of weeds and brush. In response, Roock filed a counterclaim and alleged the Allisons were engaging in vexatious litigation and abuse of process.

[8] In March, shortly after the Allisons had filed their complaint, a majority of the lot owners in the Addition agreed to amend the original Restrictions and Covenants "by removing" the restrictive covenant pertaining to the maintenance of weeds and brush. *Id.* at 191. The remainder of the Restrictions and Covenants were to "remain in effect as written." *Id.*

[9] Thereafter, Roock moved for summary judgment, and the Allisons filed a cross-motion for summary judgment. After a consolidated hearing, the trial court granted Roock's motion for summary judgment and denied the Allisons' motion. In its order, the court found and concluded that, because Roock's lot was not a Lake Lot, the Restrictions and Covenants did not apply to him. Appellants' App. Vol. 2, p. 10. The court also found and concluded that the Allisons' claims were rendered moot by the March 2023 amendment to the Restrictions and Covenants. *Id.* at 10-11. Finally, the court found and concluded that the Allisons' continued prosecution of their complaint after the March 2023 amendment was vexatious, frivolous, unreasonable, groundless,

and an abuse of process. *Id.* at 11-12. The court then ordered the Allisons to pay $9,775 to Roock for his defense of "this frivolous action." *Id.* at 13.

[10] This appeal ensued following the trial court's additional denial of the Allisons' motion to correct error.

## Standard of Review

[11] The Allisons appeal the trial court's grant of summary judgment to Roock and the denial of their motion for summary judgment. Our standard of review is well settled:

> When this Court reviews a grant or denial of a motion for summary judgment, we "stand in the shoes of the trial court." Summary judgment is appropriate "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." We will draw all reasonable inferences in favor of the non-moving party. We review summary judgment de novo.

*Arrendale v. Am. Imaging & MRI, LLC*, 183 N.E.3d 1064, 1067-68 (Ind. 2022) (citations omitted). Questions of deed interpretation present legal questions that are particularly apt for summary judgment. *See Erie Indem. Co. v. Estate of Harris,* 99 N.E.3d 625, 629 (Ind. 2018). Further, that the parties have filed cross-motions for summary judgment neither alters our standard of review nor changes our analysis—we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

## 1. Under the plain language of the Restrictions and Covenants, any amendments to them take effect only at defined ten-year marks.

[12] We first address the parties' arguments regarding whether the Allisons' claims against Roock were rendered moot by the March 2023 amendment to the Restrictions and Covenants. In construing the Restrictions and Covenants, we will read them as a whole to determine the grantors' intent by the unambiguous language they used, and presuming they intended each part to have meaning. *Underwood v. Bunger*, 70 N.E.3d 338, 341-42 (Ind. 2017).

[13] Here, the Restrictions and Covenants state as follows with respect to amending them:

> These covenants are to run with the land and *shall be binding on all parties and all persons claiming under them for a period of thirty years* from the date this plat is recorded, *after which time said covenants shall be automatically extended to successive periods of ten years unless* an instrument signed by a majority of the *then* owners of the lots *has been* recorded, agreeing to change the said covenants in whole or in part.

Appellants' App. Vol. 3, p. 146 (emphases added).

[14] That language is clear. Following the April 1969 recording of the Restrictions and Covenants, they became "binding" on all lot owners "for a period of thirty years," or until April 1999. *Id.* "[A]fter" that initial thirty-year period, the Restrictions and Covenants "automatically extended to successive periods of ten years," to 2009, 2019, 2029, and so on. *Id.* However, an exception to the

automatic ten-year extension can be had where a majority of the "then" owners agree to an amendment that "has been" recorded. *Id.*

[15] Thus, at each ensuing ten-year mark, the Restrictions and Covenants "automatically extend[]" for another ten years. *Id.* And the opportunity for amendments is framed around those extensions—that is, the automatic extension will apply for the next ten-year term "unless" an instrument signed by a majority of the "then" owners (i.e., the owners during the present ten-year term) "has been" recorded (i.e., recorded during the present ten-year term). *Id.* We therefore conclude that, if an amendment to the Restrictions and Covenants is passed by a majority of the lot owners and duly recorded, that amendment becomes effective only upon the conclusion of the present ten-year term and at the turnover into the next ten-year term.

[16] Further, to read the Restrictions and Covenants otherwise would render the ten-year terms meaningless. If amendments were to be immediately effective, there would be no need to specify that the Restrictions and Covenants automatically extend for successive ten-year terms. In that scenario, the language would simply read that the Restrictions and Covenants, including any amendments, shall be binding. Of course, the Restrictions and Covenants do not say that, and we will not read the ten-year terms out of the Restrictions and Covenants.

[17] We also note that, while considering the above language is a matter of first impression in Indiana,[1] it (or similar language) has been reviewed in other jurisdictions, and nearly every other jurisdiction is in accord with our reading of it. *See, e.g.*, *Scholten v. Blackhawk Partners*, 909 P.2d 393, 396-97 (Ariz. Ct. App. 1995); *Mauldin v. Panella*, 17 P.3d 837, 839 (Colo. App. 2000); *Illini Fed. Sav. & Loan Ass'n v. Elsah Hills Corp.*, 445 N.E.2d 1193, 1195-96 (Ill. App. Ct. 1983); *Brown v. Martin*, 794 N.W.2d 857, 860-61 (Mich. Ct. App. 2010); *Estates at Desert Ridge Trails Homeowners' Ass'n v. Vazquez*, 300 P.3d 736, 746 (N.M. Ct. App. 2013); *In re Wallace's 4th Southmoor Addition*, 874 P.2d 818, 820-21 (Okla. Civ. App. 1994). *But see Hill v. Rice*, 505 So.2d 382, 384 (Ala. 1987) (concluding that similar language was ambiguous and therefore strictly construing it in favor of the free use of land).

[18] Still, Roock contends that our reading of the Restrictions and Covenants is contrary to Indiana Code section 32-25.5-3-9 (2022), which states that a homeowners' association's governing documents "must contain a provision allowing the owners to amend the governing documents at any time" subject to certain conditions. But Roock disregards the fact that the Restrictions and Covenants are neither a homeowners' association nor the governing documents

---

[1] In his brief, Roock relies on *Hamilton v. Schaefer Lake Lot Owners Association*, 59 N.E.3d 1051, 1052-55 (Ind. Ct. App. 2016), to support his reading of the Restrictions and Covenants. But while the panel in *Hamilton* did quote similar covenant language in the facts of its opinion, at no point did that panel analyze that language or apply it to the issues on appeal. Therefore, *Hamilton* is inapposite here.

of a homeowners' association. We therefore are not persuaded by Roock's reliance on Indiana Code section 32-25.5-3-9.

[19] Accordingly, the March 2023 amendment, if passed and duly recorded,[2] cannot be effective until April 2029. The trial court therefore erred when it concluded that the Allisons' complaint was rendered moot by that amendment. We also conclude that the trial court erred when it found that the Allisons had engaged in vexatious, frivolous, or any other kind of abusive process by continuing to prosecute their complaint after that amendment. The entry of the trial court assessing attorney fees is therefore reversed.

## 2. Roock's lot is encumbered by the Restrictions and Covenants.

[20] The March 2023 amendment notwithstanding, the trial court also concluded that Roock's lot is not subject to the Restrictions and Covenants because it is not a Lake Lot. In this the trial court was mistaken. The Restrictions and Covenants apply to all lots in the Addition, including Roock's lot. In 2019, several lot owners in the Addition agreed to establish the Association, and membership within the Association is defined by which lots are Lake Lots. But membership in the Association is irrelevant to the Allisons' complaint; either way, the Restrictions and Covenants continued to apply to all lot owners.

---

[2] The Allisons contend that the March 2023 amendment was not properly recorded. We need not consider that question.

The trial court therefore erred when it concluded that Roock's lot is not subject to the Restrictions and Covenants, in particular, the restrictive covenant pertaining to the maintenance of weeds and brush. And insofar as the court concluded that the Allisons had engaged in vexatious, frivolous, or any other kind of abusive process on the theory that Roock was not subject to the Restrictions and Covenants, that judgment is also erroneous. As Roock's lot was subject to the Restrictions and Covenants and the March 2023 amendment did not immediately nullify the restrictive covenant pertaining to the maintenance of weeds and brush, the trial court's entry of summary judgment for Roock is reversed.

## 3. A genuine issue of material fact precludes the entry of summary judgment with respect to whether Roock's maintenance of his lot was in violation of the Restrictions and Covenants.

We thus turn to whether summary judgment for either party on the question of Roock's alleged violation of the Restrictions and Covenants is appropriate. And we conclude that summary judgment is inappropriate. The parties have designated competing affidavits. In one, Keith Allison stated that Roock does not properly maintain his lot. In the other, Roock stated that he does regularly maintain his lot. Accordingly, a genuine issue of material fact precludes the entry of summary judgment for either party on the question of Roock's

compliance with the restrictive covenant pertaining to the maintenance of weeds and brush.[3]

## Conclusion

[23] For the above-stated reasons, we affirm the trial court's denial of the Allisons' motion for summary judgment, we reverse the trial court's grant of Roock's motion for summary judgment, and we remand for further proceedings consistent with this opinion.

[24] Affirmed in part, reversed in part, and remanded for further proceedings.

Vaidik, J., and Kenworthy, J., concur.

ATTORNEY FOR APPELLANTS

Brian R. DeHem
DeHem Law, LLC
Noblesville, Indiana

ATTORNEYS FOR APPELLEE

Tara K.C.S.M. Herlitz
Jeffrey L. Beck
Beck Rocker, LLC
Columbus, Indiana

---

[3] The merits of Roock's argument on appeal that the Allisons have not demonstrated an irreparable injury for injunctive relief are substantively identical to this issue, and we do not separately address them.